Good morning. We are very fortunate today to have with us Chief Judge Goldberg from the Eastern District of Pennsylvania who is sitting by designation. So welcome to the court. Thank you for having me. Very happy to have you here. We have four cases on the docket today, three of which will be argued. Our first case is Global Health Solutions v. Selner, appeal number 23-2009. Mr. England, when you're ready, please proceed. Thank you. Will the clock move to 12? When it gets to your rebuttal time, it will go yellow, I believe. Yes. May it please the court, my name is John England, and I'm here on behalf of Appellant Global Health Solutions, or GHS. This case arises out of the first time the board found that a derivation petitioner actually established their case of conception by the petitioner's inventor and communication of the inventor to the respondent appellee here. And that is important today because the board implicitly found that the GHS's inventor actually conceived of the invention as of the time February 14th he communicated it to the other party. Now at issue today is actually the respondent appellee's affirmative defense of prior independent conception and the board's legal findings surrounding that. And predominantly at issue is the lack of independent cooperation. Now I will first address petitioner's independent affirmative defense, and then I'll move to the other argument of joint inventorship. I wanted to ask you about corroboration. You're alleging that the testimony of, let me make sure I got her name right, Ms. Corbin, does not corroborate the emails that were sent on February 14th, 2004, I think. And one question I have is, is that really what should be corroborated? Under our case law, what I thought needed to be corroborated was the inventor's testimony. So the inventor's testimony, Mr. Selmer's testimony of his conception of the invention needs to be corroborated by independent evidence under our case law. What case law stands for the proposition that emails that purportedly corroborate an inventor's conception testimony have to be corroborated? Well, we cited the case law that goes back to, I believe it is, the most pertinent is Hines v. Rees v. Hurst, where it's talking about the actual, we're trying to corroborate the actual evidence that's supporting the inventor's testimony. Now, the idea is not only that we're relying exclusively on the testimony to corroborate the emails, it's that the emails alone are only the inventor's testimony. We're produced by the inventor, or the alleged inventor in this case, which is Apelli, and it's whether or not we can actually rely on his own testimony and his own statement of the facts about whether those emails were actually authenticated and are actually representative of what happened back in 2014. When you say authenticated, now, you didn't dispute authentication before the PTAB, right? That is correct, Your Honor, and I do not dispute authentication today because we're not talking about authentication. We are trying to distinguish authentication from corroboration. Authentication is just someone saying that a document actually existed in its fact. This is about the sufficiency of the issue of corroboration, which is really to prevent fraud. I understand. I'm just trying to figure out what has to be corroborated. So what is your best case for saying that, you know, let's say, for example, an analogy would be that an inventor testifies and then there's an inventor notebook, and you're saying the inventor notebook has to be itself corroborated. Here, you're saying the inventor testified and these emails that have, you know, the date, a different date than his current litigation testimony, that those aren't sufficient to corroborate. They're a part of his testimony, even though they're dated years earlier. What is your best case for that? The best case that we cited for this is Rees v. Hurst. That's the CCPA case talking about inventor's notebooks, which I believe the emails would be most analogous to. Because right now we're talking about emails that were reportedly sent by the inventor to an unknown third party. The inventor's testimony is the only one that actually identifies who that unknown third party is based upon the due date of the email. Ms. Corbin's testimony cannot actually authenticate or articulate any facts surrounding who received the emails. So the email went from Selner Respondent Party to an unknown email address that was never corroborated by anybody else, put forth by any other testimony. So we ultimately, or the board, applies the rule of reason. Why isn't this just a fact scenario under the rule of reason? That is, Selner says he conceived evidence at such and such a date. He comes forward with evidence that purports to be contemporaneous with that conception. And the board evaluates that as well as your competing evidence and decides, as a legal matter, it could be corroborating because it's not his testimony. It's a document. And the board evaluates it in the context of the full record and says, under the rule of reason, we're persuaded that this is sufficient corroboration of his testimony. Why should we not analyze it that way? Well, I believe that I look at the document not as an independent document, but as an actual document prepared by the inventor that has not been seen or heard of by anybody other than... Which document? The email? I'm talking about the emails of February 14th. It was prepared by the inventor. No other parties corroborated ever seeing those emails. No other parties actually ever testified of seeing those emails. The best evidence we have is the inventor Selner's own testimony concerning the emails and Ms. Corbin's testimony in 2022, eight years after the fact, that she, at the direction of the inventor, printed out certain emails in an account directed by the inventor. But do we have a case that says if the purported corroborating documentary evidence is evidence of the inventor, as a matter of law, it cannot be sufficient under the rule of reason? I would not go so far as to bright-line rule under the rule of reason that it in and of itself cannot be evidence of invention. But when you look at the totality of the rule of reason in this case, the entire rule of reason analysis is predicated on a document that was only found by the inventor, only allegedly sent by the inventor, and there's no one else who can actually testify contemporaneous to the fact of what actually was contained in the document. Of course, here it's funny because the person who allegedly received it is Mr. Burnham, who is the other purported inventor, and we don't have independent corroboration of whether he really didn't receive it. The board had to decide if they thought he received it or not. Well, that is one factual determination that makes this case a little bit more distinguished than other cases. So in this case, the board actually found that Mr. Burnham, GHS's inventor, conceived of his invention as of a few minutes after the email was sent. And implicit in that factual determination by the board is that it was not received by Mr. Burnham before he made his conception, because otherwise he would not have been able to make his conception after the moment of derivation. Now, that has not been appealed, and that is a factual finding by the board that's not being challenged here today. Now, beyond that, the other issue is that in this case alone, there is no other evidence in the rule of reason that this email communication was actually between the two parties. You're not saying that the emails are fabricated, are you? We are not saying the emails are fabricated. What we are saying is that it is an affirmative defense, and that makes that Sellner has the burden of persuasion and production to produce the evidence that actually supports these emails. And he did not meet his burden of producing corroborating emails or corroborating evidence of this email other than the isolated testimony of Ms. Corbin. For example, he chose not to seek an affidavit from AOL to establish that these emails were actually true and authenticated as of the date he allegedly sent them, which is critical to the derivation proceeding. It's not only that the emails were actually sent, it's that the emails were sent to others, which bears on his burden of corroboration. And there's no evidence that he actually sent it to others, which would be provided by AOL. Couldn't Burnham have asked for Sellner's computer and discovery and gotten an expert to review, to test the veracity of the emails? The proceeding would have allowed Burnham to seek additional discovery to try to find that evidence, but that's not a discovery by right. It would have had to be requested, and also it was never Burnham's affirmative duty to actually negate the authenticity of those emails. It was Sellner's burden to prove that they were real. Now, what Sellner could have done is done, for example, an affidavit for AOL, or it could have shown other emails to or from that email address, which was never produced in this case. So in this case, I was just going to ask, I mean, in this case, we do have a finding by the board under the rule of reason that there was sufficient corroboration. So we only review that for substantial evidence, right? That is correct, Your Honor. Yes, that is correct, Your Honor. And so why isn't there substantial evidence? I mean, it feels like you're arguing this as if we review this de novo. Yes, I'm not trying to argue this de novo. I'm trying to argue that this entire, the rule of reason analysis is predicated on a document that we are not certain what the document actually said in 2014, besides for the inventor's testimony. If you look at everything going forward in this case, you're looking at events that occurred in 2014 between two inventors that were communicating. In 2022, this email was produced by Sellner's counsel's law clerk, who authenticated that she obtained it from Sellner's email account, and that in 2022, that Sellner's email account faithfully reproduced this document. There is no evidence in this case, other than Sellner's testimony, of who actually wrote the email, what the storage conditions were, how the email is actually... In undertaking the substantial evidence review, may we consider this email that I think, without dispute, was sent from Mr. Burnham to the daughter of Mr. Sellner, calling him an inventor of the magic goo. And may we also consider the fact, as the board pointed out, that the email that Mr. Burnham sent is largely verbatim of the email that he had received earlier that same day from Mr. Sellner. Can we consider those facts in our substantial evidence review? The rule of reason requires you to consider all facts that involve the inventorship. But I do want to address those two communications. First, the second point you raised, Judge Stark, which is about the similarity between the documents, is directly contradictory to the board finding that Burnham individually conceived of the invention before. That would imply that he had not actually received the email, at least from Sellner. And therefore, the similarity of the documents doesn't actually inform one that Sellner actually disclosed the document to him. Otherwise, it would be contradicted by their finding that he conceived of the document. The second issue is the magic goo email, and that doesn't actually disclose what was being invented. The magic goo email does describe a general invention, but it does not identify what the invention was, whether it was a composition, whether it was a method, what it was doing. And it also is a layperson testifying about what inventorship is, and that shouldn't be given very much credence. But before my time expires, I do want to touch on joint inventorship, which is an issue that is wrapped up in this prior independent conception to some extent. Now, the petitioner raised that, based upon this February 7th email from Burnham to Sellner, that joint inventorship should be considered because Sellner conceived of the invention. And Sellner contributed at least the idea of... Do you know what the board's authority is for determining inventorship in a derivation proceeding? Like, for example, is the only basis on which the board at the PTO could correct inventorship would be based on a finding of derivation? Or are you suggesting that they can make an independent determination of whether the petitioner conceived of the invention? Contributed to at least one claim, one element of one claim. Under the statute 35 U.S.C. 135B, I do believe that the board is permitted to actually correct inventorship, not with a determination of derivation. It just says inappropriate circumstances. I was going to say the first sentence talks about what the derivation proceeding is, and then it says inappropriate circumstances. It is permitted to correct inventorship. Do you agree that there is no other statute that gives the PTO the ability to correct inventorship like that? Other than, I guess there is authority to correct inventorship when a district court orders the PTO to do so, or all the parties agree and the assignees agree? Within the context of derivation, I believe this is the sole statute that would be applicable. Unless I missed something, your whole showing for joint inventorship was one sentence in the petition. No separate filing, no separate motion, no argument, but if there is more, where would I find it? You would find it in the initial petition that requests relief. Correct, just one sentence. Are there not regulations that require a request for correction of inventorship to be made by a paper separate from the petition? The board was willing to analyze correction of inventorship under Sellner's request to correct inventorship. That is found in the final written decision. Should we entertain the inventorship argument? I think that is going to reserve the rest of my time for rebuttal. Thank you. Because we asked you some questions, I am going to reinstate your rebuttal time. Mr. Handel, could you please come? Good morning, Your Honor. Good morning. I think the evidence viewed as a whole more than satisfies the standard for preponderance of the evidence. Very quickly, the board found Dr. Sellner's February 14, 2014, 1222 PM email to evidence a complete conception in the context of Sellner's January 21 email with the critical top of the claim temperature range disclosed in terms of its optical characteristics and its physical consistency as confirmed by Petitioner's Expert Diag. Burnham's admission of Sellner's inventorship to Melissa and of course Sellner's testimony on the January 20th batch as corroborated by the confirmation of my law clerk. The objection with respect to eight years is not correct. The information in the emails was contemporaneous. Emails are... Sants talk about the time difference really stems from the barbed wire case reliability. If there's been a long time, it's not reliable. Here we've got a machine recording that's absolute 100% the eight years is irrelevant. It was pulled off the email and it's completely accurate. There's no question there. It's a buggy whip argument in a space shuttle world. Could you have subpoenaed or somehow gotten discovery directly from AOL? Why did you choose to use your law clerk? We looked into it. It was a very clumsy procedure. We had Dr. Sellner's testimony about the emails. We had the AOL documents downloaded. We felt within the rule of reason it was clear that the emails were real. There was no contradictory evidence of any sort. They stood there alone, completely reliable, and no argument has been made that they're not reliable. What did you think you were corroborating by having your law clerk download the emails? Was that something necessary or just some additional evidence you decided to try to show? The emails, and there were a few of them. Let's talk about that January 21 email. That email corroborated the fact, corroborated Sellner's testimony that he created the batch on the 20th. So that was the corroboration there. It also corroborated the fact that there was a telephone conference at which Sellner disclosed his invention. It also corroborated Burnham's email. Mr. Handel, would you say that the emails themselves had to be corroborated? No. I believe Dr. Sellner testified that the emails were genuine, so they're evidence. Why did you choose to have your law clerk download the emails and talk about her process? Was that an attempt to authenticate or corroborate the emails? Well, they certainly do corroborate the emails, but the reason we did that was because they were contesting that the emails existed. They were contesting the emails existed and we wanted to prove their existence, the second way to build the weight of the evidence in our favor. So it was a matter of belt and suspenders. I've been running Patent and Lawsuits for 50 years. I've never had anybody deny so many emails. And then they came up with one email, their late February 14 email, which is verbatim our early February 14 email. And they denied that the February 14 email exists. And again, against these unreasonable denials, my law clerk downloaded both of the emails and downloaded them with time stamps and attachments and just tried to remove any question, which I think the board thinks we did. Your friend on the other side, Mr. England. Mr. England emphasizes that he reads the board as finding that he met his burden to show derivation. And the only reason he's on that side of the courtroom is because you also met your burden on affirmative defense. And I know you have a cross appealed. Do you agree with him that the board found that he met all the elements of showing derivation? Because he's saying there's something illogical about the board's analysis of these emails, that it's in tension with the board's clear finding that he would say they made that he's met his burden. What's your view of whether they found he met his burden? The board found that the late in the day February 14 email from Burnham had all the elements of the invention and constituted a communication to my client. However, the board found it was late. It was late because they found that a complete conception was evidenced by the early in the day Sellner email. Now, there's been some argument about burdens and whose burden is what and it seems to me a little confusing. What's the arguments being made? It is the petitioner that has the burden to prove earlier conception and earlier and communication. The board said the conception was later. And the communication was later. Now, petitioner has pointed to some language commenting on the lack of evidence in petitioner's case. Unremarkable because there's no evidence until February 14 of anything connected to the invention. In contrast, Sellner shows he's got the temperature range visually and optically on March 21 in the email string that included admissions from Burnham that Sellner was heeding. So, he's showing elements of the invention whether or not you agree that it's a complete conception. It might be a little technical, but it's pretty much complete. And there's later points where he's saying don't heat it so hot. The petitioner's inventor is doing work at 60 degrees. Weeks before that, Sellner disclosed not exceeding the melting point which the petitioner's expert said was around 45 degrees as I recall. So, prior to that one email which sprang, I'm not going to say out of nowhere, it sprang from my client's email. There was nothing at all that Sellner did in terms of showing a conception or a part of a conception optically, numerically, or in any way. Rather, the only numbers show he was at 60 degrees when the invention says don't go beyond 45. And then there's all this confusion about preheating water, which isn't even in the claim. So, it's not surprising that the board says there's no evidence. We've looked at the whole picture. You put no evidence here, Ms. Burnham. Whereas Dr. Sellner has all this evidence. Optical evidence, consistency evidence, temperature evidence, all of it's before your evidence. And you haven't showed us anything before that email. And that's not a partnership. So, the only issue on appeal is corroboration, right? There's two issues on appeal. One is corroboration under the rule of reason. And the other one is whether the board erred by not saying anything about inventorship. What is your view on the inventorship argument? Joint inventorship? I think the board said quite a bit about inventorship. Hang on. Let me make sure I'm being very specific. I understand that the talent here is arguing that the board should have addressed whether Mr. Burnham should have been named as an inventor separate and apart from the derivation proceeding. Do you see that as something the board should have done? We have the underlying findings of the board on inventorship. Dr. Sellner had a complete conception of the invention early in the day on the 14th. Mr. Burnham was late. The board further frowned. Nothing was derived from Mr. Burnham. The last part of the puzzle is... Not a puzzle. Dr. Sellner filed first. I think it's the same concern as Judge Stoll. As I understand it, GHS filed a petition seeking two forms of relief. One, a derivation to basically knock Mr. Sellner out completely. But in the alternative, if they didn't succeed on that, they wanted Mr. Burnham to be added as a joint inventor on the Sellner applications. There is one sentence, I think only one sentence, but one sentence in the petition going to that alternative request, which seems to parallel an alternative request, by the way, that Mr. Sellner made. The board addresses and denies Mr. Sellner's request to be a joint inventor, but never seems to say anything about Burnham's request to be a joint inventor. And I'm concerned that the board overlooked part of the case that was in front of it. I don't know what to do about that. As I recall the sentence, it was in the petition to have the derivation instituted, and it said as an additional ground for relief. Yes, it's at appendix 343. If it's helpful, I can read it to you. And it's unclear to me whether that sentence means as another reason to institute a derivation proceeding. I think that's what it means. The petition is a petition to institute. That was the basis for the petition to institute. As you say, nothing ever happened again, and I think that's pretty much the end of it. Why should we not remand at minimum and have the board address if Mr. Burnham should be added as a co-inventor on the Sellner applications? I think because the board's factual findings would make a remand meaningless, because they found that there was no derivation, and they found earlier conception. I think it's I mean, they've already done the factual finding. This court can look at that. Mr. Handel, I understand what you're saying. I understand what you're saying. You're saying the only thing we'd be remanding for is for the board to dot the I and cross the T. But isn't it their job to do that and not ours, even if it's a foregone conclusion? I think the factual findings have been made. Aren't there different standards for derivation and co-inventorship? My understanding is that there are, but if I'm wrong, explain it to me. So, as a patent prosecutor and patent examiner in the 60s, we were always taught when in doubt, add a man's name. But that's not what we're talking about here. I think to have co-inventorship, you have to have some evidence that something was derived. And the board was unequivocal. It wasn't derived. Derived doesn't mean in whole. It means derived. In whole or in part. Can I ask you a question? Yeah. I want to ask you one question, though. So, I understand your position to be that in a derivation proceeding, the PTO only has authority to change inventorship if there's a finding of derivation. The PTO does not have authority to determine whether Mr. Burnham contributed at least one element to one claim and determine whether he's a joint inventor separate from its finding of derivation. That's what I think you're saying. But can you confirm for me Inventorship where appropriate. Where the board has found no derivation. Where the board has found an earlier complete conception by Dr. Silner. Any change in inventorship is highly inappropriate and in violation of the statute. I just don't know how that. I don't know how that is correct given that the board made findings about what Burnham did. Specifically that he fully conceived of this invention nine minutes nine minutes after your client. I think that's why Mr. England is emphasizing the board's findings that he met his burden. And you don't contest that, so that's established in this case. If that's correct, that the board has found that Mr. Burnham conceived of everything. He just did it nine minutes after your client did. How can we be absolutely certain that if the board looked at the joint inventorship question, it would not possibly conclude that these are joint inventors? If I understand what was on the board's mind and assuming that that interpretation of the board's statement is correct still if there is no derivation by Dr. Silner no derivation at all, if even one element was found then that conception is independent and sold. That's what the board found. No derivation. Early conception. If Burnham had a conception a half hour later it's too late. And there's no indication that that conception had to do with anything. It's just that one email sitting there. I would say obviously copy from Dr. Silner's email a few minutes earlier and triggering a conception and understanding by Mr. Burnham that he never had before. That's not co-inventorship. That's  Okay. Thank you very much, counsel. Thank you. Thank you. Mr. Englund, you have three minutes for rebuttal. Thank you, Your Honor. I will quickly address the corroboration issue now and move to the focus of the questions on joint inventorship. So for corroboration I first want to talk I first want to go back to the email alone being the only corroborative evidence. And the issue that this case has is that this email and everything surrounding it is based solely on inventor testimony. There's no other there's no other corroboration. If this case is upheld from the board it essentially eviscerates the idea that corroboration must be by an independent witness. There is no independent witness as I elaborated earlier. It was appellee's burden to produce the evidence sufficient to demonstrate there is an independent witness to corroborate the evidence. And since they chose not to go to AOL it was their choice and their burden they failed to meet. Second of all, petitioner or appellee discussed briefly the petitioner's burden of proof. And the burden of proof is to prove conception and communication prior to a filing of an application. And that was established undeniably by petitioner as found by the board. Can you show me where is the best place to see that the board actually found you met your complete burden on derivation? The board did not address the dependent claims though. I mean, your contention is that they found you proved both the conception and the communication, right? Yeah, that's appendix 26, the board's decision. You can go there where it says that based upon the February 14th email we proved that. Or petitioner proved that fact. Because it seemed to me that at other points they said we don't actually have to decide everything about your burden, particularly the communication, because they're going to go on to find that there was prior conception by Sellner. Is that an unfair reading of the board's analysis? I believe the board's analysis read the email in context of Mr. Mewson's testimony as a third party independent witness that corroborated the communication was sent as of that time. But if I could go to joint inventorship, the issue of the board did not explicitly address the February 7th email, which was initially produced by the petitioner in the petition as the inventive step as established in conception. The board rejected the February 7th email because it went to the disclosed invention and it found that disclosed invention included specific temperatures as part of the method of manufacture. And so the February 7th email is never considered or the board never made factual findings on whether that was a material contribution from GHS's inventor to Sellner that led to Sellner's independent alleged conception. Did you argue that it was? Aside from your argument of derivation, did you argue joint inventorship based on partial contribution? And where is that in any briefing that you presented to the board other than that one sentence on page A343? That was the sole point where it was addressed exclusively in the context of joint inventorship. The petition initially, and even in the reply, did address the fact that the February 7th email that was communicated to Sellner by GHS's inventor should have been considered as a sole inventorship. But what about joint inventorship? I mean, now you're arguing that it should be remanded for the board to consider joint inventorship. And I'm asking you where, if anywhere, did you argue to the board that anything, including the February 7th email, establishes joint inventorship? That was solely in the relief requested. It was solely explicit in the relief requested. But throughout the petition and the reply, it was addressed that GHS's inventor was the first one to contribute heating the PHMB aqueous phase to a higher temperature. Do you have a site for that, where you think that is? I mean, like, specifically, again, in the context of saying, even if you find that there's no derivation, you should nonetheless say that Mr. Burnham is a joint inventor. Is that anywhere? So given that, I appreciate the candor, even if you could have argued that, even if given the board's findings, it's possible that on remand, if we ordered them to do it, maybe they would find that Mr. Burnham was a co-inventor. You didn't file a separate motion for that. You have just one sentence in the petition. It never gets argued again. And the board finds, in the end, too, that there's no derivation, which has some implication, arguably, for whether your client could be a co-inventor. Why, given all that, should we remand and give you another shot at this? Well, I'm not explicitly asking for another shot. It's for the board to fully consider the relief requested, especially identifying the petition. The reason why it should be remanded and for adjudication is because the statute authorizing a derivation specifically says that the correctorship may be corrected at the applications at issue. But that's only if the parties argue it that way, right? I mean, we can't say the board erred by not considering something that wasn't put before it, a theory that wasn't presented to it. Well, it was presented to it in the sense that it was explicitly identified in the relief requested, and it was identified that what GHS's inventor actually sent to and disclosed to Sellner prior to Sellner's February 14th alleged exception. That you presented evidence that might lead to a conclusion? But if you didn't ask for that conclusion, how is the board to know that that was your theory? Well, I mean, the relief requested explicitly asked for that conclusion. We put forth evidence that supported that relief requested. Are you referring to the statement on page A343? Yes, under the relief requested section. It was in the petition for the derivation proceedings? Yes. But then there was no request made during the derivation proceedings, right? It was not repeated, right? It was not repeated. Thank you. Thank you. The case is submitted. We thank both counsel very much for their arguments today.